IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| G.L. STEWART LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action File No. _____ |
| vs. ) | |
| ) | |
| ) | |
| BOB RICHARDS CHEVROLET COMPANY, ) | |
| INC., and ROBERT P. RICHARDS, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, G.L. Stewart LLC, hereby files its Complaint and Demand for Jury Trial against Defendants, Bob Richards Chevrolet Company, Inc. and Robert P. Richards, and states:

1. Plaintiff, G. L. Stewart LLC ("Stewart LLC"), is a Georgia limited liability corporation with its principal place of business at 2031 Gordon Highway, Augusta, Georgia 30909. Gordon Stewart is the principal owner of Stewart LLC. Stewart LLC operates a Chevrolet new motor vehicle dealership at its principal place of business.

2. Defendant, Bob Richards Chevrolet Company, Inc. ("BRC"), is a corporation organized and existing under the laws of the state of Georgia. Its principal place of business is 3540 Wheeler Road, Suite 315, Augusta, Georgia 30909 and may be served with process through its registered agent, Robert P. Richards, at said address.

1

3. Defendant, Robert P. Richards ("Richards"), is an individual living in Georgia and may be served with process personally. Jurisdiction and venue are properly exercised over Richards in this honorable Court.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). Venue is proper under 28 U.S.C. § 1391.

5. On April 12, 2007, Gordon Stewart and BRC entered into a Business Asset Purchase Agreement (the "Agreement") for the sale of substantially all BRC's assets relating to the operation of the Bob Richards Chevrolet dealership in Augusta, Georgia, including the dealership's franchise agreement with General Motors, new vehicle inventory, parts and accessories inventory, signage, tools, etc. The Agreement provided that it could be assigned by Gordon Stewart. A copy of the Agreement is attached hereto as "Exhibit A".

6. Gordon Stewart assigned to Stewart LLC all his rights under the Agreement including all rights to bring this action. Stewart LLC paid to BRC the purchase price contemplated in the Agreement. Gordon Stewart and Stewart LLC conducted a due diligence investigation in a manner which met the standards and customs of such purchases.

7. While the overall price of the transaction was much higher, Stewart LLC paid Six Million Three Hundred Thousand Dollars ($6,300,000.00) for the dealership's goodwill and business value alone.

8. Stewart LLC's decision to pay this amount for the dealership was based primarily on its review of the dealership's books, financial records, and historical sales performance of the dealership. The goodwill and business value paid by Stewart LLC was calculated as two and one-half times the dealership's overall gross annual earnings before tax; this is not an uncommon valuation method in the industry.

9.      Upon consummation of the sale contemplated in the Agreement, Stewart LLC assumed control of the daily operations of the dealership and renamed it Gordon Chevrolet.

10.     After some time of operating the dealership, Stewart LLC observed that new and used car sales and profits were nowhere near what had been reported in the records provided for review by BRC prior to consummation of the purchase of the dealership. Even considering changes in industry conditions, the sales were far below what would be expected based on the past sales history as reported by BRC.

11.     After unsuccessfully attempting to determine the cause of the sales shortfall on his own, Gordon Stewart turned to employees of the dealership who worked at the dealership both before and after the transfer.

12.     Stewart LLC learned that while BRC operated the dealership, employees engaged in a pattern and practice of illegal activities that resulted in significantly higher new and used car sales than would have been achieved without such improper practices.

13.     Specifically, when dealing with potential customers, dealership employees routinely falsified information on customer credit applications to make certain customers appear more creditworthy to potential lenders. Employees also falsely filled out credit applications routinely on behalf of certain customers and signed customers' names to such false applications. Upon information and belief, BRC and Richards were aware of and encouraged these institutional practices. These activities resulted in more customers being approved for credit for which they did not actually qualify and thus more sales of new and used vehicles than would have been otherwise achieved, as well as higher profitability of the dealership. Additionally, the sales obtained by using these methods artificially inflated the dealership's sales numbers such

3

that the dealership's sales effectiveness appeared greater than what would have been achieved through legal sales practices.

14. While Stewart LLC expects to identify additional examples through the discovery process, to date, the following specific transactions wherein BRC falsified customer information have been identified:

(a). On or about December 15, 2006, at BRC's dealership in Augusta, Georgia, BRC falsified a credit application by intentionally representing to potential financing sources that the subject consumer's monthly income was greater than what the consumer applicant actually made in a given month. BRC's misrepresentation was intentional, as the subject consumer accurately reported his salary to BRC.

(b). On or about May 16, 2006, at BRC's dealership in Augusta, Georgia, BRC falsified a credit application by intentionally representing to potential financing sources that the subject consumer's monthly income was greater than what the consumer applicant actually made in a given month. BRC's misrepresentation was intentional, as the subject consumer accurately reported her salary to BRC.

(c). On or about October 5, 2006, at BRC's dealership in Augusta, Georgia, BRC falsified a credit application by intentionally representing to potential financing sources that the subject consumer's monthly income was greater than what the consumer applicant actually made in a given month. BRC's misrepresentation was intentional, as the subject consumer accurately reported his income to BRC.

15. Falsifying credit applications is clearly illegal and wrongful in that it amounts to, among other things, fraud on the lenders, fraud on the customers, breach of duties owed to

customers, violation of the federal Truth in Lending Act, violation of state and federal RICO acts, and potential violation of the federal Credit Repair Organizations Act.

16. Defendants used the United States mail, interstate telephone calls and/or electronic correspondence in furtherance of these activities.

17. BRC also caused customer satisfaction surveys to be fraudulently filled out and mailed to General Motors Corporation such that it was able to qualify for incentives for which it may not have otherwise qualified.

18. Furthermore, upon information and belief, BRC booked sales of vehicles which were not kept in its normal inventory and this further artificially (and wrongfully) inflated its alleged profitability and value.

19. As a result of fraudulent practices, BRC's books reflected earnings that were not indicative of the dealership's true value. Accordingly, when Stewart LLC agreed to pay two and one-half times the dealership's annual gross earnings (before taxes) as shown on the dealership's books, it paid more than fair market value for the dealership because of fraud by BRC and Richards. Had it been aware of the fraudulent practices and activities of BRC and Richards, Stewart LLC would not have purchased the dealership at the price paid. Indeed, had Stewart LLC been informed that BRC and Richards maintained these fraudulent practices it would not have purchased the dealership.

20. BRC and Richards did not make the fraudulent activities known to Gordon Stewart or Stewart LLC while negotiating for the sale set forth in the Agreement.

21. Because Gordon Stewart and Stewart LLC were not aware of these activities, they were not made aware that the earnings being reported by the dealership were the result of illegal and unethical practices. Indeed, in the Agreement, BRC specifically represents and warrants that

it is not in violation of any laws which could have a material adverse effect on Stewart LLC's operation of the dealership and that BRC did not omit any material facts or provide any misleading information to Gordon Stewart or Stewart LLC.

22.  In reliance on the earnings and sales numbers presented by BRC and Richards in its books and records and BRC's representation that it had not omitted any material information and that it was not in violation of any laws, Stewart LLC acted to purchase the dealership and other assets of BRC as set forth in the Agreement.

## COUNT I
### Fraud and Deceit

23.  Plaintiff realleges and incorporates herein paragraphs 1 through 22 as if set forth in full.

24.  Paragraph 3.8 of the Asset Purchase Agreement provides that "[BRC] is not in violation of any laws regulations or ordinances relating to the Business, Business Assets which could have material adverse effect on [Stewart LLC] or the operation of the Assets or the Business by [Stewart LLC] after Closing."

25.  Paragraph 3.17 provides:

No representation or warranty by [BRC] contained in this Agreement and no writing, certificate, list or other instrument furnished or to be furnished to [Stewart LLC] pursuant hereto or in connection with the transaction contemplated hereby contains or will contain any untrue statements of material fact or omits or will omit to state a material fact necessary in order to make the statement and information contained therein not misleading or which is necessary in order to provide a prospective Buyer of the Business and Assets of Seller with full and proper information as to [BRC] and its affairs.

26.  Upon information and belief, BRC and Richards knowingly made false representations to Gordon Stewart and Stewart LLC in that they presented BRC's financial records to Stewart and Stewart LLC while failing to disclose that much of the dealership's

income was derived from illegal and unethical activities. In fact, BRC represented just the opposite—that there had been no illegal activity and that no omissions of material facts had been made.

27. Upon information and belief, BRC and Richards knew that their representations were false, for Richards and BRC were aware of and encouraged BRC's employees to engage in the illegal and unethical activities.

28. Upon information and belief, BRC and Richards intended to deceive Gordon Stewart and Stewart LLC and to keep them from discovering the truth that the dealership's financial records were artificially and fraudulently bolstered by illegal and unethical activities, so that Stewart would purchase the dealership at a price well in excess of its actual worth.

29. Gordon Stewart and Stewart LLC relied on the information provided to it by BRC and Richards as is customary in the industry in making its decision to purchase the dealership at the agreed upon price. It was not possible for Gordon Stewart or Stewart LLC to have discovered BRC and Richards' actions prior to the consummation of the transaction.

30. Stewart LLC has suffered loss as a result of the misrepresentation in that it purchased the dealership at a price far in excess of the dealership's actual worth. Moreover, Defendants have each acted with willful misconduct, malice, fraud, wantonness, and an entire want of care so as to be consciously indifferent to the consequences of their actions.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages suffered by the Plaintiff, together with prejudgment interest, court costs and attorney fees, punitive damages, and any other relief which this court may deem just and equitable.

## COUNT II
## Breach of Contract

31.   Plaintiff realleges and incorporates herein paragraphs 1 through 30 as if set forth in full.

32.   BRC's business activities violated law, and such violations have had and will continue to have an adverse effect on Stewart LLC and its operation of the dealership. Moreover, BRC in its representations and presentation of materials to Gordon Stewart and Stewart LLC omitted certain material facts and thereby prevented Gordon Stewart and Stewart LLC from obtaining full and proper information as to BRC and its affairs.

33.   These actions are in direct breach of the representations and warranties set forth in Paragraphs 3.8 and 3.17 of the Agreement, and Stewart LLC has been damaged thereby.

WHEREFORE, Plaintiff demands judgment against BRC for damages suffered by the Plaintiff, together with prejudgment interest, court costs and attorney fees and any other relief which this court may deem just and equitable.

## COUNT III
## Conspiracy to Commit Fraud (Georgia R.I.C.O.)

34.   Plaintiff realleges and incorporates herein paragraphs 1 through 33 as if set forth in full.

35.   As alleged herein, BRC, Richards, and others combined to accomplish an unlawful end or to accomplish a lawful end by unlawful means.

36.   Specifically, upon information and belief, BRC and Richards conspired to defraud Gordon Stewart and Stewart LLC through a combination and systematic enterprise of racketeering activity as those terms are defined by Chapter 14 of Title 16 of the Official Code of Georgia.

37. As alleged herein, BRC and Richards engaged in a repeated pattern of fraudulent and improper behavior in a scheme to acquire monies from GL Stewart LLC as detailed herein. Such actions violate Chapter 14 of Title 16 of the Official Code of Georgia.

38. Stewart LLC has been damaged as a result of BRC and Richards's unlawful actions.

WHEREFORE, Plaintiff demands judgment against the Defendants for damages suffered by the Plaintiff, together with prejudgment interest, court costs and attorney fees and any other relief which this court may deem just and equitable, including (but not limited to) an award at three times the actual damages plus litigation and attorney costs as detailed in O.C.G.A. § 16-14-6(c).

## COUNT IV
### Civil RICO Violation Under 18 U.S.C. 1962

39. Plaintiff realleges and incorporates herein paragraphs 1 through 38 as if set forth in full. This is an action for damages for violation of 18 U.S.C. § 1962, and sets forth the following averments under information and belief.

40. Defendants, BRC and Richards, engaged in a "pattern of racketeering activity" as defined by 18 U.S.C. § 1961(1) in violation of 18 U.S.C. § 1962(c).

41. BRC and Richards were aware of and encouraged dealership employees to routinely falsify information on customer credit applications to make certain customers appear more creditworthy to potential lenders. Employees, with the encouragement and awareness of BRC and Richards, also falsely filled out credit applications routinely on behalf of certain customers and signed customers' names to such false applications. Upon information and belief,

BRC and Richards were aware of and encouraged these institutional practices. BRC and Richards's participation in such activities is in violation of 18 U.S.C. § 1344.

42. BRC and Richards's activities detailed herein also violate 18 U.S.C. §§ 1341 and 1343 in that they used the United States mail, interstate telephone calls and/or electronic correspondence in furtherance of these activities.

43. In violation of 18 U.S.C. § 1341, BRC, with the knowledge and encouragement of Richards, also caused customer satisfaction surveys to be fraudulently completed and mailed to General Motors Corporation such that it was able to qualify for incentives for which it may not have otherwise qualified.

44. BRC and Richards were associated with an enterprise engaged in, or activities which affected, interstate commerce in that the dealership, among other activities, bought new and used vehicles from sources outside of the State of Georgia, sold new and used vehicles to entities outside the State of Georgia and assisted customers in obtaining financing from entities outside the State of Georgia.

45. As a result of fraudulent practices, BRC's books reflected earnings that were not indicative of the dealership's true value. Accordingly, when Stewart LLC agreed to pay two and one-half times the dealership's annual gross earnings (before taxes) as shown on the dealership's books, it paid more than fair market value for the dealership because of fraud by BRC and Richards. Had BRC and Richards not maintained and consciously allowed a practice of falsifying customer credit applications and customer satisfaction scores to inflate BRC's reported profits, the dealership's books would have reflected a much lower value for the dealership.

46. As a result of the actions of BRC and Richards in violation of 18 U.S.C. §1962(c), Stewart LLC has been damaged.

47.     Pursuant to 18 U.S.C. § 1964(c), Stewart LLC is authorized to bring a civil action against BRC and Richards for violation of 18 U.S.C. § 1962(c).

WHEREFORE, Plaintiff demands judgment against the Defendants for treble damages, costs and attorney fees as provided by 18 U.S.C. § 1964(c) together with prejudgment interest, and any other relief which this court may deem just and equitable.

### RELIEF SOUGHT

WHEREFORE, G. L. Stewart prays as follows:

A.     That a jury trial be held;

B.     That the court award the relief sought herein; and

C.     That the Court issue such further relief as it deems just, fit and proper.


Submitted this 6th day of August, 2009.


/s/ William J. Keogh III

JOHN FOREHAND
*Attorney for Plaintiff, G.L. Stewart*
LEWIS, LONGMAN & WALKER, P.A.
2600 Centennial Place, Suite 100
Tallahassee, FL  32308
850-222-5702
(Pro Hac Vice Application Pending)

WILLIAM J. KEOGH, III
*Attorney for Plaintiff, G.L. Stewart*
HULL, TOWILL, NORMAN, BARRETT & SALLEY
801 Broad Street, Suite 700
Augusta, GA  30901
706-722-4481